UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cr-00041-MOC-WCM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| GILBERTO RODRIQUEZ, | ) | |
| Defendant. | ) | |

Defendant, Gilberto Rodriguez, filed a Motion asking this Court to reduce his sentence of imprisonment, relying in large part on the threat posed by the COVID-19 pandemic. (Doc. No. 83). Defendant also filed a Motion to Appoint Counsel. (Doc. No. 85). The United States responded to the motions on December 5, 2020. (Doc. No. 87). Thus, this matter is ripe for disposition.

## BACKGROUND

Defendant was convicted of Distribution of at Least 5 grams of Actual Methamphetamine. This Court sentenced him on February 1, 2017 to 100 months of imprisonment, followed by 4 additional years of supervised release. His projected release date is August 9, 2023. He now moves under 18 U.S.C. § 3582(c)(1)(A)(i) for a sentence reduction, relying in large part on the threat posed by the coronavirus ("COVID-19") pandemic.

Defendant entered a guilty plea on June 3, 2016, to the count described above. According to the Presentence Report ("PSR") (Doc. No. 50), Defendant was the subject of a drug investigation by the United States Drug Enforcement Administration ("DEA") beginning in April of 2013. A confidential source ("CS1") made a controlled buy of methamphetamine, at the direction of investigators, from Defendant at Defendant's residence in Flat Rock, North Carolina on May 2, 2013. The DEA lab determined that the methamphetamine purchased contained .67 gram of

1

"actual" methamphetamine. Defendant entered a guilty plea on June 3, 2016, to the count described above.

The DEA developed another confidential source ("CS2") in June of 2014 after CS1 was incarcerated. CS2 made a controlled buy of methamphetamine, at the direction of investigators, from Defendant at Defendant's residence in Flat Rock, North Carolina on June 16, 2014. The DEA lab determined that the methamphetamine purchased contained 24.4 grams of "actual" methamphetamine.

A Federal Grand Jury indicted Defendant on June 2, 2015 for two counts of distribution of methamphetamine. Investigators arrested Defendant on June 4, 2015 at his residence in Flat Rock, North Carolina. Defendant consented in writing to a search of his residence. Investigators recovered a loaded Hi-Point, Model JCP, .40 cal. semi-automatic pistol on a desk and within arm's reach of Defendant's bed. There was one round in the chamber and nine additional rounds in the magazine. Once interviewed, Defendant admitted to buying the firearm and to having it because of threats and dangers related to narcotics trafficking. Defendant also admitted to having methamphetamine concealed in a clock on the same desk where the firearm was recovered. Investigators recovered 3.5 grams of methamphetamine from the clock.

The PSR indicates in paragraph 19 that Defendant was responsible for a total of 25.07 grams of "actual" methamphetamine and another 3.5 grams of a mixture or substance containing methamphetamine, resulting in a base offense level of 26. The PSR indicates in paragraph 20 that Defendant received a two-level enhancement for possession of the firearm, resulting in a total adjusted offense level of 28. However, Defendant was a career offender within the meaning of U.S.S.G. § 4B1.1, resulting in a much higher offense level of 34 as indicated by paragraph 25 of the PSR. After a three level reduction for acceptance of responsibility, Defendant's total offense level was 31 as indicated by paragraph 28 of the PSR. As a career offender, Defendant was in the highest

criminal history category possible, VI, as indicated by paragraph 42 of the PSR.

The Court calculated Defendant's advisory guidelines range to be 188 to 235 months. The government moved, under seal, for a downward departure the equivalent of six offense levels, reducing the advisory guidelines range to 110 to 137 months. The Court granted the government's motion. The Court departed one additional level and sentenced Defendant to 100 months of imprisonment, followed by 4 additional years of supervised release. (Doc. No. 57).

As of the date of this filing, Defendant has served 4 years, 6 months and 25 days of his 8 year and 4 month sentence. (Doc. No. 87, Exh. 1 at 4). Defendant is housed in Federal Correctional Institution ("FCI") Elkton in Lisbon, Ohio. His projected release date is August 9, 2023. (Id. at 4).

Defendant filed the current Motion for Compassionate Release with this Court on November 9, 2020 seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 83). Defendant argues, among other things, that there were a "plethora of errors committed by [BOP] and FCI Elkton;" the medical [staff] was unable to fulfill its duty leading to the deployment of the Ohio State National Guard at FCI Elkton; that "almost 1,000 inmates and staff" contracted COVID-19 at FCI Elkton; that there was a ruling by the United States District Court for the Northern District of Ohio that FCI Elkton staff were "guilty of deliberate indifference and cruel and unusual punishment;" and that he has submitted evidence proving that he suffers from a variety of medical problems: high blood pressure, hypertension, asthma, skin problems, high cholesterol and a high BMI number (or obesity). (Doc. No. 83 at 2-5).

## LEGAL FRAMEWORK

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and

3

(ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.1. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

(I)  suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

## DISCUSSION

### I. Motion for Compassionate Release

This Court denies Defendant's Motion for a reduction in his sentence because he has not established that "extraordinary and compelling reasons" exist for that reduction within the meaning of § 3582(c)(1)(A)(i) and the Sentencing Commission's policy statement, and he has not met his

burden to show that a reduction is warranted considering the danger Defendant would pose to the community under the relevant § 3553(a) factors.

As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). There are two primary issues that come through Defendant's Motion for Compassionate Release – (1) that COVID-19 is out of control at FCI Elkton; that FCI Elkton is ill-prepared, ill-equipped and operating in violation of a Federal District Court order that found the staff "guilty of deliberate indifference and cruel and unusual punishment" with respect to their COVID-19 response; and that the BOP's response to the pandemic is ineffective at FCI Elkton; and (2) the fact that Defendant has a number of medical conditions including high blood pressure "that is out of control" and "cannot be treated medically" at FCI Elkton, hypertension, asthma, high cholesterol, panic attacks, a weak heart or heart conditions requiring medication, borderline diabetes, obesity, and skin problems – with one or more of the cited conditions putting him at "extreme risk" if he contracts COVID-19.

The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A). For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application

5

note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see also United States v. Eberhart, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify the mere existence of COVID-19 and the possibility that it may spread to a particular prison as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement.

Defendant alleges that COVID-19 is out of control at FCI Elkton; that FCI Elkton is ill-prepared, ill-equipped and operating in violation of a Federal District Court order that found the staff "guilty of deliberate indifference and cruel and unusual punishment" with respect to their COVID-19 response; and that the BOP's response to the pandemic is ineffective at FCI Elkton. Although things clearly were out of control at FCI Elkton in the early months of the pandemic,[1]

---

[1] As stated in Defendant's First, Second and Third Motions for Compassionate Release, the Ohio National Guard was indeed, at the request of the Ohio Governor Mike DeWine, sent to support FCI Elkton with medical services and equipment, beginning on April 6, 2020. See www.army.mil/article/235307/ohio_national_guard_provides_medical_aid_at_federal_prison. They spent 20 days at FCI Elkton – meaning that the Ohio National Guard has not been at FCI Elkton to assist in its response to the COVID-19 pandemic in more than seven months.

there are two major problems with the argument raised by Defendant today: (1) things are no longer out of control at FCI Elkton; and (2) Defendant's argument completely ignores the decision handed down by the Sixth Circuit Court of Appeals vacating the order from the United States District Court for the Northern District of Ohio that he cites in each of his Motions for Compassionate Release.

Contrary to what Defendant argues, COVID-19 is not out of control at FCI Elkton and BOP's response to the pandemic has been effective at FCI Elkton. But, Defendant claims, the staff at FCI Elkton are operating in violation of a Federal District Court order that found the staff "guilty of deliberate indifference and cruel and unusual punishment" with respect to their COVID-19 response. Defendant is referring to the preliminary injunction entered by the United States District Court for the Northern District of Ohio on April 22, 2020.

The Sixth Circuit, considering dormitory housing at FCI Elkton, the sufficiency of supplies at FCI Elkton, and FCI Elkton's response to the COVID-19 pandemic, did not find that the BOP or the FCI Elkton staff were guilty of deliberate indifference and cruel and unusual punishment. To the contrary, the Sixth Circuit found that they "responded reasonably to the known, serious risks posed by COVID-19 to [the inmates] at Elkton." (Doc. No. 87, Exh. 2, at 13). The Sixth Circuit did not find that the BOP or staff at FCI Elkton or the conditions at FCI Elkton violated any inmate's Eighth Amendment right to be free from cruel and unusual punishment. In responding reasonably to the risk posed, the Sixth Circuit found that neither BOP nor the staff at FCI Elkton were "deliberately indifferent" to any inmate's Eight Amendment rights (Id. at 14). The preventative measures taken and the efforts to expand testing demonstrated the "opposite of a disregard of a serious health risk." (Id.). Indeed, Defendant was tested for COVID-19 on three different occasions while at FCI Elkton (Doc. No. 87, Exh. 1 at 46-51). Contrary to what Defendant argues, COVID-19 is not out of control at FCI Elkton, the BOP's response to the pandemic has been effective at FCI Elkton, and the staff at FCI Elkton are not operating in violation of any Court order regarding the

pandemic.

Turning to the individual inmate in this case and the risks he faces, Defendant asserts that he has a number of "well-documented medical conditions" – including high blood pressure "that is out of control" and "cannot be treated medically" at FCI Elkton, hypertension, asthma, high cholesterol, panic attacks, a weak heart or heart conditions requiring medication, borderline diabetes, obesity, and skin problems – with one or more of the cited conditions putting him at "extreme risk" if he contracts COVID-19.

The CDC lists a number of underlying medical conditions that present an "increased risk for severe illness from the virus that causes COVID-19" in adults of any age including things such as cancer; chronic kidney disease; chronic obstructive pulmonary disease or COPD; heart conditions such as heart failure or coronary artery disease; obesity; and Type II diabetes mellitus. Defendant claims he suffers from two of these conditions – a weak heart or heart conditions requiring medication and obesity. The CDC also lists a number of additional medical conditions that "might" put people "at an increased risk for severe illness from the virus that causes COVID-19," including things such as moderate to severe asthma, neurologic conditions such as dementia, and hypertension or high blood pressure. Defendant further claims to have two of these conditions: high blood pressure "that is out of control" and "cannot be treated medically" and asthma.[2]

At the outset, it should be noted, the Court was unable to find any references in Defendant's medical records from BOP that establish that Defendant has a "weak heart" or "heart conditions requiring medications" or that Defendant has ever suffered from "asthma." That leaves obesity and high blood pressure that Defendant states is "out of control" and "cannot be treated medically" at FCI Elkton. There is no evidence in Defendant's medical records that either Defendant's obesity or high blood pressure are terminal. The only question then is if the obesity or high blood pressure effect his

---

[2] Defendant also cites hypertension as an additional and separate medical condition, but high blood pressure and hypertension refer to the same condition.

8

Case 1:15-cr-00041-MOC-WCM   Document 90   Filed 12/11/20   Page 8 of 11

ability to provide self-care within the environment of a correctional facility.

Defendant described his high blood pressure as "out of control" and claimed that it "cannot be treated medically" at FCI Elkton. There is no evidence to suggest that Defendant's high blood pressure or hypertension is a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility or that he is not expected to recover from the condition. There is no evidence presented by Defendant to substantiate his claim that FCI Elkton's "medical department has even admitted that [his] serious medical disability cannot be treated medically [at FCI Elkton]." (Doc. No. 83 at 4).

For the reasons described above, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c).

This Court must also deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Defendant's offense leading to his conviction was serious. He was a methamphetamine source of supply. As the Court has often remarked, methamphetamine is an extremely dangerous drug that wreaks havoc on those that use it – and their families and communities by extension. Defendant also had a loaded gun – admittedly possessed in connection with his narcotics trafficking activities – and a stash of methamphetamine in his residence at the time of his arrest.

Defendant is also likely vulnerable to recidivism. According to paragraph 42 of the PSR, as a career offender, Defendant qualified for the highest criminal history category possible under the Sentencing Guidelines. His long criminal history, stretching back more than two decades, includes ten prior felony convictions for drug related offenses – including Possession with Intent to Manufacture, Sell and Deliver a Schedule II Controlled Substance; Sell or Deliver a Schedule II

9

Controlled Substance; Possession with Intent to Manufacture, Sell and Deliver a Schedule II Controlled Substance; Sell or Deliver a Schedule II Controlled Substance; Felony Possession of a Controlled Substance; Sale of Methamphetamine; Sale of Methamphetamine; Attempt to Traffic Cocaine by Transport; Attempt to Traffic Cocaine by Possession; and Possession with Intent to Sell or Deliver Cocaine. Those convictions give Defendant a felony drug record in three different states – North Carolina, Texas and Florida. Particularly disturbing, and contrary to Defendant's argument that he has a "low recidivism risk status," is the fact that, according to paragraph 41 of the PSR, Defendant committed the serious drug trafficking felony in this case while still on probation for a prior felony drug trafficking conviction.

There is no doubt that Defendant has worked while in FCI Elkton and attended programs and classes designed to rehabilitate inmates and prepare them for a more law-abiding life. However, those facts need to be weighed alongside his disciplinary actions while in FCI Elkton which counter, to some extent, Defendant's attempt to hold himself out as an exemplary inmate committed to getting on the right path – whether those are the three different incidents of refusing to work, two related incidents of refusing to obey an order, or possessing a "hazardous tool" (with a lock in a sock being seen by most as a weapon), or fighting. (Doc. No. 87, Exh. 1 at 6-7).

Defendant's sentence should not be reduced. The need for the sentence to reflect the true extent and seriousness of Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from Defendant's further crimes remains undiminished. Defendant's involvement in drug trafficking; admitted possession of a firearm in connection with his drug trafficking activities; and status as a career offender, demonstrates that he is a threat to the public safety if released. The § 3553(a) factors also strongly disfavor a sentence reduction. Defendant may have completed a significant portion of his sentence but allowing his early release would create an unwarranted sentencing disparity with other similarly

situated defendants. His 100 months sentence is still a just punishment and hopefully enough to deter him from future criminal conduct.

Accordingly, in light of Defendant's record and the §3553 factors, including the seriousness of his criminal conduct in this case, the Court denies the Motion for Compassionate Release.

## II. Motion to Appoint Counsel

Defendant's motion to appoint counsel is denied, as he has no constitutional right to counsel in assisting him with filing a motion for reduction of sentence/compassionate release.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require.  See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000); see also United States v. Reed, 482 F. App'x 785, 786 (4th Cir. 2012); cf. 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). Here, Defendant has not established the interests of justice require appointment of counsel.

## CONCLUSION

For these reasons, Defendant's Motion for Compassionate Release (Doc. No. 83) and Motion to Appoint Counsel (Doc. No. 85) are **DENIED**.

Signed: December 11, 2020

Max O. Cogburn Jr.
United States District Judge